AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Jose Torres | ) | Case No. 17 MJ01379 |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | ) | |

FILED
CLERK, U.S. DISTRICT COURT
JUN - 2 2017
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __1/31/2013__ in the county of __Los Angeles__ in the __Central__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 554 | Attempting to export merchandise from the United States contrary to law |

This criminal complaint is based on these facts:

See attached affidavit

LODGED
2017 JUN -1 AM 11:57

☐ Continued on the attached sheet.

/s/
Complainant's signature

Stephanie Johnson
Printed name and title

Sworn to before me and signed in my presence.

Date: 6/2/17

City and state: Los Angeles, California

JACQUELINE CHOOLJIAN
Judge's signature

Jacqueline Chooljian, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Stephanie Johnson, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1.  I am a Special Agent ("SA") with the U.S. Fish and Wildlife Service ("FWS"), Office of Law Enforcement. I am presently assigned to the Torrance, California, field office and have been so employed since June of 2011. In that capacity, I am responsible for the investigation of, among other things, violations of the Endangered Species Act, 16 U.S.C. § 1531, *et seq.*, and other related statues, including the smuggling statutes under Title 18 of the United States Code. Prior to obtaining a position with the FWS as a Special Agent, I was employed as a Refuge Officer for the FWS at the Wichita Mountains National Wildlife Refuge near Indiahoma, Oklahoma between 2008 and 2011, and as a Refuge Officer for the FWS at the Rocky Mountain Arsenal National Wildlife Refuge, in Commerce City, Colorado, between 2004 and 2008. I am a graduate of the Natural Resource Protection Training Program, the Criminal Investigator Training Program, and the USFWS Special Agent Basic School at the Federal Law Enforcement Training Center in Glynco, Georgia. During the last 14 years, I have handled complex fish and wildlife investigations involving violations related to the interstate and international trafficking and smuggling of wildlife.

## II. PURPOSE OF AFFIDAVIT

2.  This affidavit is made in support of a criminal complaint against and arrest warrant for JOSE TORRES for a violation of Title 18, United States Code, Section 554 (attempting to export merchandise from the United States contrary to law).

3.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and/or information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and/or in part only.

## III. APPLICABLE LAW

4. The Endangered Species Act ("ESA") is a federal law that, among other things, regulates the importation and exportation of certain wildlife and plants to and from the United States, and implements the United States' obligations under the Convention on the International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). Pursuant to the ESA, the Secretary of the Interior may prescribe such regulations as are necessary to carry out the purposes of the ESA. 16 U.S.C. § 1538(d)(3).

5. CITES is an international agreement among approximately 183 nations, including the United States and Mexico, which establishes certain requirements that must be met before CITES-protected wildlife may be imported or exported from signatory nations. Wildlife protected under CITES is listed in a series of appendices (Appendix I, II, and III). The level of trade restrictions applicable to a particular type of wildlife is governed by the specific appendix that lists that wildlife.

6. Appendix II lists wildlife that is not necessarily now threatened with extinction but that may become so unless trade is closely controlled. 50 C.F.R. § 23.4. CITES-protected wildlife listed in Appendix II includes the animal, whether dead or alive, and any readily recognizable part or derivative thereof. See 50 C.F.R. § 23.4; CITES, art. I(b), Mar. 3, 1973, 27 U.S.T. 1087, 993 U.N.T.S. 243. Unless an exemption applies, trade in Appendix II wildlife requires a CITES export or re-export certificate issued by the country of export. 50 C.F.R. §§ 23.13, 23.20. "Trade" as the term is used under CITES means the same as "international trade," which includes the export across jurisdictional or international boundaries for any purpose whether commercial or noncommercial. 50 C.F.R. § 23.5.

7. All corals within the order Scleractinia are included in Appendix II of CITES, including, among others, the following genera: *Acanthastrea, Acanthophyllia, Acropora, Alveopora, Blastomussa, Catalaphyllia, Caulastraea, Cynarina, Euphyllia, Favia, Fungia, Galaxea, Goniopora, Heliofungia, Lobophyllia, Montipora, Scolymia, Trachyphyllia,* and *Turbinaria*. In addition, the genus *Tubipora*, which is within the order Stolonifera (not

Scleractina), is also listed in Appendix II. Corals within the orders Scleractinia and Stolonifera are also known as stony corals. 50 C.F.R. § 23.5.

8. The ESA prohibits trade in any specimens contrary to the provisions of CITES. 16 U.S.C. §§ 1538(c), 1540(b).

9. Federal regulations require an importer or exporter of wildlife to complete the FWS Declaration for the Importation or Exportation of Fish or Wildlife (Form 3-177) and submit the form to the FWS. 50 C.F.R. §§ 14.61, 14.63.

10. Title 18, United States Code, Section 554 prohibits one from fraudulently or knowingly exporting or attempting to export or send from the United States merchandise contrary to any law or regulation of the United States. It also prohibits the sale of such merchandise knowing the same to be intended for exportation contrary to any law or regulation of the United States.

### IV. STATEMENT OF PROBABLE CAUSE

11. On the night of January 31, 2013, I received a phone call from FWS SA Ed Newcomer notifying me that FWS Wildlife Inspector ("WI") Laurie Hilliard called and informed him that she discovered a shipment containing live stony corals[1] that were not declared to the FWS during an inspection of outbound parcels at Los Angeles International Airport ("LAX"). I subsequently responded to the Aero Mexico Cargo Facility at LAX.

12. When I arrived at the Aero Mexico Cargo Facility, I met with SA Newcomer and WI Hilliard. I learned that a company named Orca International ("Orca") had attempted to export a shipment that, according to the documents associated with the shipment, including FWS Form 3-177, purportedly consisted of 16 boxes of live tropical fish.[2] I was directed to the shipment and saw that, in fact, the shipment consisted of 40 boxes labeled as "live fish,"

---

[1] Based on my training and experience, I know that stony corals are also referred to as "hard corals."

[2] Based on my training and experience, I know that wildlife exporters submit FWS Form 3-177 electronically in advance of delivering the wildlife intended for export to request clearance for the shipment.

3

including several boxes that contained live stony corals listed in CITES Appendix II. I was given FWS Form 3-177 corresponding to the shipment and noted that the form only listed "TROPICAL FISH (MARINE SPP.)"; it did not declare the live stony corals.

13. While at LAX, WI Hilliard told me that earlier in the day on January 31, 2013, two separate sets of documents related to the shipment had been submitted to FWS: one set was submitted by fax and another set was hand-delivered by TORRES to the FWS Field Office in Torrance, California ("FWS Torrance Field Office").

    a. First, WI Hilliard told me that documents were faxed to FWS Torrance Field Office earlier in the day, which were reviewed by WI Ali Ventura and appeared to be an invoice for the shipment that differed from other documents she later received for the shipment. According to a report by WI Hilliard, WI Ventura noticed that the faxed invoice contained one item listed as "COMMON CULTURED MONTIPORA," which is a type of stony coral listed in CITES Appendix II and would require a CITES permit to be exported from the United States. I subsequently reviewed the invoice that was faxed to the FWS Torrance Field Office and noted that it was made out to "Gabriela Herlinda Medina," located in Mexico, and included a line item for *Montipora*.

    b. Then, WI Hilliard told me that while she was working at the front desk of the FWS Field Office in Torrance during the afternoon that day, TORRES entered the lobby and gave her additional documents for his export later that night, including a different invoice for the shipment. WI Hilliard told me that she reviewed the documents and noticed that no corals or other CITES-protected species were listed on the invoice. WI Hilliard said she cleared the shipment and implied to TORRES that the shipment would not be physically inspected prior to export.

14. I assisted with the inspection of the shipment at LAX. I opened several boxes and helped photograph multiple bags containing CITES-protected corals that required CITES permits to export from the United States. After completing the inspection and documenting the

shipment, SA Newcomer and I seized all of the boxes (and their contents) and brought them to the FWS Torrance Field Office for storage.

15.  On the morning of February 1, 2013, WI Hilliard, WI Juan Ramirez, SA Newcomer, and I returned to the FWS Torrance Field Office and further reviewed and thoroughly documented the items that were contained in the shipment seized on January 31, 2013. During that process, WIs Hilliard and Ramirez identified each item, and I prepared an inventory of all items seized, which identified the stony corals down to genus name. Based on that review, I determined that the shipment contained 475 items that were not declared on FWS Form 3-177, as required, including live stony corals, Scleractinian coral rock,[3] invertebrates (such as live soft corals and zooanthids), and live aquatic snails. Of the 475 items, 427 were CITES-protected specimens, including stony corals and Scleractinian coral rock, which required CITES permits for export.[4]

16.  Later on February 1, 2013, TORRES voluntarily appeared at the FWS Torrance Field Office for an interview. SA Newcomer and I interviewed TORRES in the conference room. TORRES indicated the following, among other things, during the interview:

    a.  TORRES said that he was the owner of Orca. According to TORRES, in 2012 Alice Ikari ("Ikari") and her husband gave TORRES the company, Fish In the Bag, which he subsequently renamed Orca International. TORRES initially stated that he was the sole employee at Orca, but later indicated that he worked with Ikari.

    b.  Later in the interview, TORRES stated that Orca and Fish In the Bag were different companies. TORRES said that Orca primarily sells wildlife – locally, interstate, and

---

[3] Based on my training and experience, I know that Scleractinian coral rock refers to coral rock that contains pieces, parts, or derivatives of dead coral from the order Scleractinia, but where the precise genus of the dead stony coral cannot be identified. Coral rock means hard consolidated material greater than 30 mm measured in any direction that consists of pieces of stony coral that contain no living coral tissue and possibly also cemented sand, coralline algae, or other sedimentary rocks. 50 C.F.R. § 23.5. Coral rock includes live rock and substrate, which are terms for pieces of coral rock to which other live specimens are attached, including other invertebrate species or coralline algae that are not listed in the CITES appendices. Id.

[4] In addition to the 475 undeclared items, the shipment also contained tropical fish, which were properly declared on FWS Form 3-177, and were subsequently returned to TORRES.

overseas. According to TORRES, Fish In the Bag imports wildlife that Orca subsequently sells. TORRES said that Orca pays for the imported wildlife.

  c. TORRES said that everything about the company is in his name, including the bank account.

  d. TORRES stated that he takes orders from customers and that "most of the time" he is the only one who packs the orders, though occasionally Ikari assists with packing. TORRES said that he personally knows what is packed in every shipment. TORRES noted that Ikari prepares the invoices for the orders.

  e. TORRES admitted knowing that CITES permits were required for all imports and exports of coral and said that he had obtained permits for exports of coral in the past.

  f. TORRES admitted that he completed FWS Form 3-177 for the shipment dropped off on January 31, 2013, which indicated that he intended to export 16 boxes of live fish to a customer in Mexico named "Gabriela." TORRES further admitted that he took 40 boxes to the airport for export and that the additional boxes contained live CITES-protected corals. TORRES stated that the corals were included at the customer's request. TORRES estimated that the boxes contained approximately 500 pieces of coral. TORRES acknowledged that he was only supposed to include fish in the boxes and referred to his actions as a "mistake."

  g. TORRES admitted that he did not obtain a CITES export permit for the corals, noting that it takes "a very long time" to get a CITES permit and repeated that he "made a mistake."

  h. TORRES stated that Ikari did not tell him to do anything and confirmed that it was all his decision to ship the CITES-protected coral without the required permit.

  i. TORRES admitted that he previously exported coral to "Gabriela."[5]

---

[5] On May 31, 2017, I queried the FWS Law Enforcement Management Information System ("LEMIS") for all international shipments declared by Orca and noted that Orca previously obtained a CITES permit to export stony corals to "Gabriela Herlinda Medina Caballero" in May 2012. Based on my review of the information in LEMIS, "Jose Torres dba Orca International USA" obtained the CITES permit.

   j. After the interview, SA Newcomer and I returned to TORRES the live tropical fish that were properly declared in the shipment.

  17. On February 22, 2013, TORRES voluntarily appeared at the FWS Torrance Field Office for a follow-up interview. SA Newcomer and I interviewed TORRES in the conference room. TORRES indicated the following, among other things, during the interview:

   a. TORRES stated that he initially spoke with Gabriela to set up the business relationship, but thereafter Gabriela placed orders via email, which were reviewed by Ikari.

   b. TORRES was shown a copy of the invoice for the shipment seized on January 31, 2013, and was asked why it only referenced 16 boxes and did not list any coral species. TORRES stated that Ikari made the invoice and he never looked at it.

   c. TORRES said that both he and Ikari packed the shipment that was seized on January 31, 2013, and that Ikari knew there was coral in the shipment.

   d. When TORRES was asked why coral was not included on the invoice, he answered that it was because Ikari had not made the invoice for the corals yet, noting that the invoice for coral is usually made one or two days later. According to TORRES, Gabriela knew that she would owe more money for the shipment than what was stated on the invoice because coral is more expensive than fish.

   e. TORRES said that he was responsible for paperwork and everything related to CITES for imports and exports.

  18. On April 3, 2017, TORRES voluntarily appeared at the FWS Torrance Field Office for follow-up interview to answer questions regarding the attempted export of live stony corals on January 31, 2013. SA Juan Ramirez[6] and I met with TORRES in the conference room. During the interview, TORRES was presented with three sets of documents that were submitted by TORRES and/or Orca concerning the shipment delivered for export on January 31, 2013: (1) the invoice that was faxed to the FWS Torrance Field Office during the day on January 31, 2013;

---

[6] SA Juan Ramirez is previously mentioned in this affidavit as WI Ramirez. SA Ramirez was promoted from a Wildlife Inspector to a Special Agent in 2016.

(2) the paperwork that was hand delivered by TORRES to WI Hilliard at the FWS Torrance Field Office during the day on January 31, 2013; and (3) the documents that were submitted to the airline (i.e., Aero Mexico) on the evening of January 31, 2013. TORRES indicated the following, among other things, during the interview:

    a.    TORRES said that he did not know someone else faxed an invoice to the FWS Torrance Field Office on January 31, 2013, that included an item for "COMMON CULTURED MONTIPORA."

    b.    When SA Ramirez asked TORRES about the discrepancies among the three sets of paperwork, TORRES claimed that he never looked at the paperwork.

    c.    TORRES stated that he was responsible for the export.

19.    In February 2013, SA Newcomer obtained a copy of TORRES' Federal Fish and Wildlife Permit, Import/Export License (number LE63269A-0) ("FWS Import/Export permit") issued by the FWS that was associated with the attempted export of stony corals on January 31, 2013. I have reviewed that FWS permit, which was effective on the date of the attempted export. The permit listed "Jose Torres dba Orca International USA" as the permittee and listed TORRES' residential address – not Orca's business location -- as the business address. I subsequently learned that a separate FWS Import/Export permit issued to "Fish In the Bag dba Orca International" (number LE043382-0) was also effective on the date of the attempted export. I have reviewed that permit and noted that it listed Orca's business location as the company's address and Ikari as the company's owner.

20.    In addition to the FWS Import/Export permit, the following documents also suggested that TORRES was the owner of Orca:[7]

---

[7] Based on the evidence in this case, the identity of the true owner of Orca is not entirely clear. Notwithstanding TORRES' admission that he was the owner and the documents described below, there is other evidence that Ikari may be the true owner. Ikari told Gardena Police Officers that Orca is another name for Fish In the Bag and that she is the sole owner of Fish In the Bag. According to Ikari, she uses the names interchangeably depending on the business transaction. In addition, certain documents and records associated with Orca reflect the business name "Fish In the Bag" – which is understood to be Ikari's company – including the City of

  a. The check submitted to the FWS to pay for the inspection fee of the shipment seized on January 31, 2013, reflected the account owner as "Jose Torres dba Orca International USA."

  b. The California State Board of Equalization Seller's Permit hanging on the wall at Orca's place of business reflected "Orca International Jose Torres" as the permittee.

## V. CONCLUSION

21. For all the reasons described above, there is probable cause to believe that TORRES committed a violation of Title 18, United States Code, Section 554 (attempting to export merchandise from the United States contrary to law).

/s/
_____
STEPHANIE JOHNSON, Special Agent
U.S. Fish and Wildlife Service

Subscribed to and sworn before me
this 2 day of June, 2017

JACQUELINE CHOOLJIAN
_____
HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE

---

Gardena Business License Certificate that hung on the wall at Orca's place of business, the business email address used by Orca (and included on Orca's letterhead), and the second FWS Import/Export permit described above. Moreover, when SA Newcomer and I interviewed two Orca customers, they stated that Orca was actually the business they know as Fish In the Bag and indicated that Ikari was their contact person at the business.

9