NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ERIK M. SILBER (Cal. Bar No. 190534)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
    1300/1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2231/7418
    Facsimile: (213) 894-8513/6269
    E-mail:    Erik.Silber@usdoj.gov
            David.Friedman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>JOSE TORRES,<br><br>       Defendant. | No. CR 17-582-ODW<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  November 19, 2019<br>Trial Time:  9:00 a.m.<br>Location:   Courtroom of the<br>              Hon. Otis D. Wright |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Erik M. Silber and David R. Friedman, hereby files its trial memorandum.

///

///

///

///

///

///

The government respectfully requests leave to file additional memoranda as may become appropriate before or during the course of trial.

Dated: November 12, 2019                Respectfully submitted,

                                        NICOLA T. HANNA
                                        United States Attorney

                                        BRANDON D. FOX
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                              /s/
                                        ERIK M. SILBER
                                        DAVID R. FRIEDMAN
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES.................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    STATUS OF THE CASE.............................................1

      A.    Witnesses...............................................1

      B.    Stipulations............................................2

      C.    Pretrial Motions........................................2

II.   STATEMENT OF FACTS............................................2

III.  THE CHARGED OFFENSES..........................................5

      A.    Attempted Export Contrary to Law (Count One)............5

            1.    The Government Can Prove the Second Element in
                  Two Different Ways: Either Defendant Acted
                  Contrary to Law (Because He Violated CITES) or
                  Contrary to Regulation (Because He Submitted a
                  False Wildlife Declaration).......................6

            2.    Mens Rea..........................................8

            3.    Defendant Still Violated Section 554 Even If He
                  Misunderstood Why His Conduct Was Unlawful........9

      B.    Making and Submitting a False Record for Wildlife
            Intended to Be Exported (Counts Two and Three).........10

      C.    Causing an Act to Be Done (All Counts).................12

IV.   LEGAL AND EVIDENTIARY ISSUES.................................14

      A.    Authentication and Identification......................14

            1.    Chain of Custody for the Seized Coral............14

            2.    Authentication of the Audio Recordings..........15

            3.    Transcripts of Audio Recordings.................17

      B.    Photographs............................................18

      C.    Public Records.........................................18

      D.    Business Records.......................................19

i

## <u>TABLE OF CONTENTS (CONTINUED)</u>

<u>DESCRIPTION</u>                                                                                  <u>PAGE</u>

     E.   Defendants' Statements...................................20

     F.   Best Evidence Rule......................................21

     G.   Affirmative Defenses....................................22

     H.   Reciprocal Discovery...................................22

V.   CONCLUSION..................................................23

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                      PAGE

Kennedy v. Los Angeles Police Dep't,
    901 F.2d 702(9th Cir. 1990)...................................19

United States v. Acosta-Licerio,
  756 F. App'x 743(9th Cir. 2018) ................................. 9

United States v. Armstrong,
  909 F.2d 1238 (9th Cir. 1990) ..................................13

United States v. Asper,
  2000 WL 827114 (N.D. Ill. 2000) ...............................10

United States v. Black,
  767 F.2d 1334(9th Cir. 1985) ..................................14

United States v. Blackwood,
   878 F.2d 1200(9th Cir. 1989) .................................14

United States v. Cardenas,
  810 F.3d 373 (5th Cir. 2016) (per curiam) ...................... 9

United States v. Chu Kong Yin,
   935 F.2d 990(9th Cir. 1991) ..................................14

United States v. De Peri,
  778 F.2d 963 (9th Cir. 1985) ..................................16

United States v. Fountain,
  277 F.3d 714(5th Cir. 2001) ...................................12

United States v. Freeman,
  498 F.3d 893 (9th Cir. 2007) ..................................16

United States v. Godoy,
  528 F.2d 281 (9th Cir. 1975) ..................................15

United States v. Gracidas-Ulibarry,
  231 F.3d 1188 (9th Cir. 2000) (en banc) ................... 8, 9, 12

United States v. Grubb,
  469 F. Supp. 991 (E.D. Pa. 1979) ..............................13

United States v. Harrington,
  923 F.2d 1371 (9th Cir. 1991) ..................................15

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Huber,
    772 F.2d 585 (9th Cir. 1985) ............................................ 20

United States v. May,
    622 F.2d 1000 (9th Cir. 1980) ........................................... 18

United States v. Michaels,
    796 F.2d 1112 (9th Cir. 1986) ........................................... 13

United States v. Oaxaca,
    569 F.2d 518 (9th Cir. 1978) ............................................ 18

United States v. Pandhandle Trading, Inc.,
    2006 WL 2094671 (N.D. Fla. 2006) ........................................ 12

United States v. Ray,
    930 F.2d 1368 (9th Cir. 1990 ............................................ 19

United States v. Rivero,
    889 F.3d 618 (9th Cir. 2018) ......................................... 8, 9

United States v. Roselli,
    432 F.2d 879 (9th Cir. 1970 ............................................. 13

United States v. Smith,
    714 F. App'x 701 (9th Cir. 2017) ........................................ 6

United States v. Sneezer,
    900 F.2d 177 (9th Cir. 1990) ........................................ 8, 12

United States v. Stearns,
    550 F.2d 1167 (9th Cir. 1977) ........................................... 18

United States v. Vaccaro,
    816 F.2d 443 (9th Cir. 1987) ............................................ 13

State Cases

16 U.S.C. § 1540(b)(1) ...................................................... 2

16 U.S.C. § 3373(d)(3) ..................................................... 10

16 U.S.C. §§ 1538(c)(1) ..................................................... 2

16 U.S.C. §§ 3372(d)(1) .................................................... 10

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

18 U.S.C. § 554.................................................5, 8, 9

50 C.F.R. § 14.63.................................................... 3

Federal Statutes

Fed. R. Evid. 104(a)............................................... 20

Fed. R. Evid. 1101(d)(1)........................................... 20

Fed. R. Evid. 803.................................................. 19

Fed. R. Evid. 901.................................................. 14

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   STATUS OF THE CASE**

3

A jury trial for defendant Jose Torres ("defendant") is set for

4

November 19, 2019, at 9:00 a.m.  The estimated time for the

5

government's case-in-chief, including jury selection, is two days.

6

Defendant is on bond pending trial.

7

**A.   Witnesses**

8

Absent stipulations, the government expects to call six

9

witnesses in its case-in-chief:

10

1.   Custodian of Records, United States Fish and Wildlife

11

Service ("USFWS")

12

2.   USFWS Wildlife Inspector Laurie Hilliard

13

3.   USFWS Special Agent Ed Newcomer Jr.

14

4.   Maria Pelaez, AeroMexico

15

5.   USFWS Special Agent Juan Ramirez Amezcua

16

6.   Dr. Sandra E. Trautwein, Aquarium of the Pacific

17

The government expects the direct of Ms. Pelaez and the USFWS

18

custodian (if called), to take approximately ten minutes or less, the

19

directs of Special Agent Ramirez Amezcua and Wildlife Inspector

20

Hilliard to take approximately a half hour, the direct of Dr.

21

Trautwein to take approximately an hour, and the direct of Special

22

Agent Newcomer to take approximately two hours.  The defense has

23

identified that the cross of Ms. Pelaez will likely take 30 minutes,

24

the cross of the USFWS custodian of record will likely take 15

25

minutes, the crosses of Special Agent Ramirez Amezcua and Wildlife

26

Inspector Hilliard will each likely take a half hour, the cross of

27

Dr. Trautwein will likely take an hour, and the cross of Special

28

Agent Newcomer will likely take an hour and a half.

1    Depending on the defense case, the government may call a

2    rebuttal witness or witnesses.

3         **B.   Stipulations**

4         The government is attempting to reach agreement with defense

5    counsel to obviate the need for Ms. Pelaez to testify, as well as to

6    stipulate to the admissibility of exhibits.

7         **C.   Pretrial Motions**

8         Defendant filed a motion to suppress statements (Dkt. 31) and

9    the government filed a motion for a mental examination under Rule

10   12.2(c) (Dkt. 54).

11        The government initially filed two motions _in limine_ to exclude:

12   (1) defendant's proposed expert testimony; and (2) testimony

13   regarding the beliefs of USFWS agents about defendant's culpability.

14   (Dkt. 48).  The government more recently filed a third motion to

15   exclude Alice Ikari's hearsay statements at trial.  (Dkt. 67).

16        Defendant has, to date, filed five motions _in limine_ to exclude:

17   (1) Special Agent Ramirez Amezcua's statement regarding Spanish

18   language ability (Dkt. 44); (2) the use of coral inventories and

19   handwritten notes to show the contents of the shipment (Dkt. 45);

20   (3) 404(b) evidence (Dkt. 46); (4) evidence that shipments were

21   generally not inspected at night (Dkt. 51); and (5) additional 404(b)

22   evidence (Dkt. 52).

23   **II.  STATEMENT OF FACTS**

24        The Endangered Species Act prohibits trade in specimen contrary

25   to the Convention on International Trade in Endangered Species of

26   Wild Fauna and Flora ("CITES").  16 U.S.C. §§ 1538(c)(1), 1540(b)(1).

27   CITES, in turn, requires documentation, including a permit, to export

28   wildlife listed in CITES Appendix II.  Among other wildlife, CITES

1    Appendix II protects _Scleractinia_ and other types of coral (in the
2    trade, the term "hard" coral generally refers to CITES-protected
3    coral and "soft" coral refers to unprotected coral).  In 2013,
4    federal regulations also required, and still require, an exporter of
5    wildlife to complete the United States Fish and Wildlife Service
6    ("USFWS") Declaration for the Importation or Exportation of Wildlife
7    (Form 3-177), submit the form to the USFWS, and certify that the form
8    is true and complete.  50 C.F.R. § 14.63.

9         The government expects that the evidence admitted at trial will
10   establish the following facts:

11        Around the time of the offense, defendant identified himself as
12   the owner of Orca International, or Jose Torres dba Orca
13   International ("Orca").  Alice Ikari ("Ikari") was associated with
14   that company.  Ikari also owned Fish In The Bag, where Torres worked
15   and, according to Torres, he had worked for Ikari for almost 20
16   years.

17        One of their clients was a company called Gabriela Herlinda
18   Medina ("Medina").  Defendant had recruited that client in Mexico,
19   and he was the primary contact person for communications with the
20   owners because they spoke Spanish, as did he, but not Ikari.
21   Defendant was generally responsible for obtaining CITES documentation
22   and filing wildlife declarations with the USFWS, including for this
23   client.  Before January 31, 2013, defendant had previously obtained
24   CITES permits to ship coral to Medina, as well as for other clients.
25   According to defendant, CITES permits are hard to obtain and
26   obtaining them can often take four to six months.

27        Around January 2013, Medina wanted to buy fish and coral from
28   defendant.  Originally, the plan was to ship the fish and wait on the

CITES permit for the coral.  Medina, however, decided that it did not
want to wait for the CITES permit and wanted the coral shipped
immediately.  Defendant knew the coral was CITES-protected and
required a permit.  He nevertheless decided to ship the coral without
the CITES permit.  Defendant did so even though he imported that
coral the day before (January 30, 2013) from Indonesia with a CITES
permit (and with a wildlife declaration and invoice that identified
CITES-protected coral).

To export the coral unlawfully without a CITES permit, defendant
went into the USFWS district office in Torrance, California on
January 31, 2013, to pay for a wildlife declaration that he submitted
and to get the shipment cleared by the USFWS.  Before doing so,
defendant had personally packed 40 boxes for shipment and knew they
contained CITES-protected coral.  Defendant, however, provided a
wildlife declaration that stated there were only 16 cartons being
shipped and did not identify any coral.  The form itself identifies
that "[k]nowingly making false statement in a Declaration for
Importation or Exportation of Fish or Wildlife may subject the
declarant to the penalty provided by 18 U.S.C. 1001 and 16 U.S.C.
3372(d)" and requires certification "under penalty of perjury that
the information furnished is true and correct."  Defendant also
provided an invoice for the shipment that listed only fish and
identified that there were 16 cartons of fish being shipped.

That night, January 31, 2013, defendant went to Los Angeles
International Airport and provided to AeroMexico the documentation,
paperwork, and 40 cartons to be transported to Mexico.
Because defendant re-used boxes for the shipment from the importation
of the coral the night before, some of the boxes had green stickers

that identified the contents as CITES-protected, which had been

placed on the boxes when they were imported from Indonesia.

Moreover, some of the boxes also had labels that identified the

contents as coral (by genera) that were protected under CITES and

that matched the invoice from the importation of the coral the night

before (which, again, was done with a CITES permit).  The USFWS

inspected the cartons and seized 474 undeclared items, including many

CITES-protected coral.

**III.  THE CHARGED OFFENSES**

    **A.   Attempted Export Contrary to Law (Count One)**

On September 20, 2017, a federal grand jury in the Central

District of California returned a three-count indictment against

defendant.  (Dkt. 4).  The first count charged defendant with

attempting to export wildlife contrary to law in violation of 18

U.S.C. § 554:

> On or about January 31, 2013, in Los Angeles County, within
>
> the Central District of California, defendant JOSE TORRES
>
> fraudulently and knowingly attempted to export and send
>
> from the United States, and willfully caused another to
>
> attempt to export and send from the United States,
>
> merchandise, namely, live corals of the genera
>
> Acanthastrea, Acanthophyllia, Acropora, Alveopora,
>
> Blastomussa, Catalaphyllia, Caulastraea, Cynarina,
>
> Euphyllia, Favia, Fungia, Galaxea, Goniopora, Heliofungia,
>
> Lobophyllia, Montipora, Scolymia, Trachyphyllia,
>
> Turbinaria, and Tubipora, knowing that such exportation was
>
> contrary to law, that is: (1) without obtaining the
>
> required CITES documentation, in violation of the

1    Endangered Species Act, Title 16, United States Code,

2    Sections 1538(c)(1), (g), and 1540(b)(1), and Title 50,

3    Code of Federal Regulations, Sections 23.13 and 23.20; and

4    (2) without filing a completed Declaration for Importation

5    or Exportation of Fish or Wildlife (Form 3-177) with the

6    United States Fish and Wildlife Service, in violation of

7    Title 50, Code of Federal Regulations, Section 14.63.

8  (Dkt. 4 at 3).  For defendant to be guilty of violating that

9  provision, the government must prove:

10   First, the defendant knowingly exported, sent, attempted to

11   export, or attempted to send from the United States

12   merchandise; and

13   Second, the exportation or sending was contrary to law or

14   regulation; and

15   Third, the defendant knew the exportation or sending was

16   contrary to law or regulation.

17  Ninth Circuit Model Criminal Jury Instruction 8.35A.[1]

18        1.   The Government Can Prove the Second Element in Two

19             Different Ways: Either Defendant Acted Contrary to Law

20             (Because He Violated CITES) or Contrary to Regulation

21             (Because He Submitted a False Wildlife Declaration)

22       To establish the second element at trial, the government need

23  only show that defendant violated one of the following:

24

25

26  _____

27       [1]  The government could also prove a violation of § 554 by
    showing that defendant acted "fraudulently," which the Ninth Circuit
    has suggested would require specific intent, see United States v.

28  Smith, 714 F. App'x 701, 705 (9th Cir. 2017), but the government will
    not rely upon this theory at trial.

6

First, federal law (including a statute and accompanying regulations) prohibit the trade in any animals contrary to CITES, which is an international agreement among governments, including the United States and Mexico.  It violates federal law to export animals protected under CITES Appendix II from the United States without obtaining and providing CITES documents, including a CITES export permit.  Endangered Species Act, Title 16, United States Code, Sections 1538(c)(1), (g), and 1540(b)(1), and Title 50, Code of Federal Regulations, Sections 23.13 and 23.20.  Appendix II of CITES protects coral that is Scleractinia.  To prove a violation of law at trial, the government need only show that defendant attempted to export one piece of Scleractinia.

Second, before exporting wildlife, federal regulations require an individual to file a completed Declaration for Importation or Exportation of Wildlife, or Form 3-177, and submit it to the United States Fish and Wildlife Service.  The individual must furnish all information requested on Form 3-177, that information must be true and complete, and the individual must certify that all information provided on Form 3-177 is true and complete to the best of his knowledge and belief.  50 C.F.R. § 14.63.  As identified in count two, defendant's wildlife declaration was not true, complete, and accurate because:  (1) it listed "fish," but omitted coral; and (2) it stated that the shipment consisted of 16 cartons containing wildlife, when, in fact, the shipment consisted of 40 cartons containing wildlife.

Thus, although the government can prove that defendant is guilty on count one because he violated CITES, the government can also prove

that he violated count one by making false statements on the wildlife declaration irrespective of CITES.

### 2. Mens Rea

Section 554 requires only that a defendant act "knowingly."  The Ninth Circuit has explained that "[s]uch language normally signifies a requirement of general, not specific, intent." United States v. Sneezer, 900 F.2d 177, 179 (9th Cir. 1990); see also United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc) ("In general, 'purpose' corresponds to the concept of specific intent, while 'knowledge' corresponds to general intent.").  The Ninth Circuit has also rejected arguments that § 554 requires proof of willfulness or some other heightened mens rea.  In United States v. Rivero, 889 F.3d 618 (9th Cir. 2018), for example, the defendant argued that "when the government prosecutes a defendant under § 554(a) for exporting items contrary to § 2778, the government must prove that the defendant knew that the exported items were arms, munitions, or military equipment as specified in § 2778." Id. at 621.  But the Ninth Circuit squarely rejected this argument.  According to the Court, "[n]othing in the language of the statute requires knowledge of the nature of the merchandise, article, or object." Id. at 621-22.  "If [the defendant] knew that the truck contained merchandise that was unlawful to export, but elected not to look in the truck, he would meet the requirements of § 554(a) of knowing that he was exporting 'merchandise . . . contrary to law.'"

1    <u>Id.</u> at 622.[2]  <u>Rivero</u> makes clear that the <u>mens rea</u> is a general-

2    intent crime for a violation of Section 554.

3         Defendant is charged with the act of attempting to export in

4    violation of § 554, but that does not change the analysis

5    here.  Although "attempt" is generally a crime of specific intent,

6    <u>see</u> <u>Gracidas-Ulibarry</u>, 231 F.3d at 1192-93, <u>Rivero</u> makes clear that a

7    heightened <u>mens rea</u> does not apply when (as here) the indictment

8    alleges the defendant "attempted" to export items in violation of

9    § 554.  Even though the defendant in <u>Rivero</u> was also charged with

10   "attempted" export, the Court approved jury instructions that did not

11   include any reference to specific intent or willfulness.  <u>See</u> <u>id.</u> at

12   620.  And in a subsequent decision, the Ninth Circuit (again) held

13   that "willful or intentional conduct is not an element of the offense

14   of exporting or sending or attempting to export or send specified

15   items from the United States in violation of 18 U.S.C. § 554(a)."

16   <u>United States v. Acosta-Licerio</u>, 756 F. App'x 743, 744 (9th Cir.

17   2018).  As a result, the Ninth Circuit concluded that "the district

18   court did not err in omitting those elements from the jury

19   instruction or in refusing to give a separate instruction regarding

20   attempt."  <u>Id.</u>; <u>see also</u> <u>United States v. Cardenas</u>, 810 F.3d 373 (5th

21   Cir. 2016) (per curiam).

22        3.   <u>Defendant Still Violated Section 554 Even If He</u>

23             <u>Misunderstood Why His Conduct Was Unlawful</u>

24        Through his expert, defendant has challenged whether he

25   correctly understood CITES and therefore whether the government can

26   _____

27        [2] <u>Rivero</u> left open whether the defendant needs to know that his
     conduct was unlawful.  889 F.3d at 622 n.2.  Consistent with the
28   Ninth Circuit's model instruction, however, the government intends to
     argue—and prove—that defendant knew his conduct was unlawful.

                                       9

prove the third element of the offense.  Rivero is clear that a
defendant may be convicted of violating § 554 even if he is unsure --
or mistaken -- about why the exportation or sending is contrary to
law.  See also United States v. Asper, CR No. 98-954, 2000 WL 821714,
at *4 (N.D. Ill. 2000) (concluding, in a CITES case, that the
defendant "may defend himself by asserting that he did not know that
his importation was contrary to law.  However, [defendant] need not
have had knowledge of particular violations, but only that the
importation was contrary to law in some respect.").  The defendant
must know only that the exportation or sending is contrary to law in
some way.  For example, if a defendant thinks that he is exporting a
shipment of grenades -- and knows this is contrary to law -- but it
turns out that he is actually exporting a shipment of CITES-protected
wildlife -- which is also contrary to law -- then he is still guilty
of violating § 554 because he knew that his actions were unlawful.
Similarly, here, by way of example, if defendant thought he was
attempting to export coral contrary to CITES (because all types of
coral were CITES-protected), but his understanding was not fully
correct (because only hard coral was CITES-protected), defendant
would still have known he was acting unlawfully by attempting to
export hard coral.

   **B.   Making and Submitting a False Record for Wildlife Intended
        to Be Exported (Counts Two and Three)**

   Counts two and three both charge defendant with making and
submitting a false record for wildlife intended to be exported in
violation of 16 U.S.C. §§ 3372(d)(1), 3373(d)(3).  Count two alleges:

   On or about January 31, 2013, in Los Angeles County, within
   the Central District of California, and elsewhere,

defendant JOSE TORRES ("TORRES") knowingly made and
submitted, and willfully caused to be made and submitted, a
false record for wildlife that was intended to be exported
from the United States.  Specifically, defendant TORRES
made and submitted to the United States Fish and Wildlife
Service a Declaration for Importation or Exportation of
Fish or Wildlife (Form 3-177), dated January 31, 2013,
which: (A) omitted live corals that, as defendant TORRES
then well knew, were included in the shipment and intended
to be exported from the United States to Mexico; and
(B) indicated that the shipment comprised 16 cartons
containing wildlife, when, as defendant TORRES then well
knew, the shipment comprised 40 cartons containing
wildlife.

(Dkt. 4 at 4).  Count three alleges:

On or about January 31, 2013, in Los Angeles County, within
the Central District of California, and elsewhere,
defendant JOSE TORRES ("TORRES") knowingly submitted, and
willfully caused to be submitted, a false record for
wildlife that was intended to be exported from the United
States.  Specifically, defendant TORRES submitted to the
United States Fish and Wildlife Service Orca International
USA Invoice no. 25189, which omitted live corals that, as
defendant TORRES then well knew, were included in the
shipment and intended to be exported from the United States
to Mexico.

(Dkt. 4 at 5-6).

11

1    For defendant to be guilty of these counts, the government must

2    prove:

3         First, the defendant knowingly made or submitted a false record

4         concerning fish or wildlife; and

5         Second, the fish or wildlife were intended to be exported.

6    Ninth Circuit Model Criminal Jury Instruction 9.14; see also United

7    States v. Panhandle Trading, Inc., CR No. 05-44-RS, 2006 WL 2094671,

8    at *4 (N.D. Fla. 2006) (listing elements). "Congress chose knowingly

9    as the mens rea requirement for the false-records provision." United

10   States v. Fountain, 277 F.3d 714, 717 (5th Cir. 2001).  Although the

11   second element requires proof that the wildlife were "intended to be

12   exported," the Ninth Circuit has explained -- in the similar context

13   of § 554 -- that this "passive construction" requires "only 'knowing'

14   the item is intended for export, rather than an 'intent to export.'"

15   United States v. Chi Tong Kuok, 671 F.3d 931, 944 (9th Cir. 2012).

16   And as explained above, the mens rea of "knowingly" provides for a

17   general-intent crime.  See, e.g., Sneezer, 900 F.2d at 179; Gracidas-

18   Ulibarry, 231 F.3d at 1196.

19   The term "fish or wildlife" means any wild animal, whether alive

20   or dead, including without limitation any wild mammal, bird, reptile,

21   amphibian, fish, mollusk, crustacean, arthropod, coelenterate, or

22   other invertebrate, whether or not bred, hatched, or born in

23   captivity, and includes any part, product, egg, or offspring thereof.

24   16 U.S.C. § 3371(a).  Both hard and soft coral are animals.

25   **C.   Causing an Act to Be Done (All Counts)**

26   Finally, as to all three counts, the grand jury charged that

27   defendant violated 18 U.S.C. § 2(b) by willfully causing others to

28   commit the respective offenses charged in each count.  As the Ninth

Circuit has explained, "Section 2 does not define a substantive offense, but rather 'describes the kinds of individuals who can be held responsible for a crime; it defines the degree of criminal responsibility which will be attributed to a particular individual.'" United States v. Armstrong, 909 F.2d 1238, 1243 (9th Cir. 1990) (quoting United States v. Grubb, 469 F. Supp. 991, 996 (E.D. Pa. 1979)).  Indeed, the inclusion of § 2 in an indictment is "simply surplusage" because the two types of liability described in that statute—causal liability and aiding and abetting liability—are "implied in every indictment." Id. at 1242 (quoting United States v. Roselli, 432 F.2d 879, 895 n.27 (9th Cir. 1970)).  As a result, the decision to charge defendant under § 2(b) did not alter the elements or mens rea that the government must prove at trial.  See, e.g., United States v. Vaccaro, 816 F.2d 443, 453-54 (9th Cir. 1987) (concluding that inclusion of aiding and abetting charge did not change the applicable mens rea); United States v. Michaels, 796 F.2d 1112, 1118 (9th Cir. 1986) (explaining that "the specific inclusion of § 2(b) is insignificant" and does not change the applicable mens rea).

The government will request an instruction under Section 2(b) at trial, Ninth Circuit Model Criminal Jury Instructions, No. 5.1A (2010 ed.) ("A defendant may be found guilty of the crimes charged even if the defendant did not personally commit the acts constituting the crime if the defendant willfully caused an act to be done that if directly performed by him would be an offense against the United States.  A defendant who puts in motion or causes the commission of an indispensable element of the offense may be found guilty as if he had committed this element himself.").

**IV.   LEGAL AND EVIDENTIARY ISSUES**

   **A.   Authentication and Identification**

   The requirement of authentication or identification as a condition precedent to admissibility is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Federal Rule of Evidence 901(a) requires that the government "make only a prima facie showing of authenticity 'so that a reasonable juror could find in favor of authenticity or identification.'" United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (quoting United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989)).  Once the government meets this burden, "[t]he credibility or probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

   Notably, under Federal Rule of Evidence 104(b), the Court may permit witnesses to discuss or testify about exhibits that will be authenticated by witnesses who are subsequently called in the government's case-in-chief.

         **1.   Chain of Custody for the Seized Coral**

   In January 2013, Special Agent Newcomer seized the evidence and placed it in evidence bags and/or observed it being placed into evidence bags.  On October 30, 2019, Special Agent Ramirez Amezcua opened the evidence bags to allow the government expert to view their contents, and he again re-opened bags on November 8, 2019, to allow the defense expert to view them.  He will likely open at least some of the bags an additional time before trial.  On each occasion, Special Agent Ramirez Amezcua then signed and dated the re-sealed bags, or will sign and date the re-sealed bags.

The testimony of Special Agent Newcomer and Special Agent Ramirez Amezcua sufficiently establish the chain of custody for purposes of Rule 901 authentication, which is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). See, e.g., United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991) (testimony of officer who observed items being seized and then placed by another officer into a bag that contained all the seized items, and who further identified the record attached to the bag indicating chain of custody, was sufficient for a reasonable juror to conclude evidence had not been altered). In establishing chain of custody as to an item of physical evidence, the government is not required to call all persons who may have come into contact with the piece of evidence. Id. Moreover, a presumption of regularity exists in the handling of exhibits by public officials. Id. Therefore, to the extent that alleged or actual gaps in the chain of custody exist, such gaps would go only to the weight of the evidence rather than to its admissibility. Id. (citing United States v. Godoy, 528 F.2d 281, 284 (9th Cir. 1975) (per curiam)).

### 2. Authentication of the Audio Recordings

The government will introduce audio recordings of three interviews with defendant that took place on February 1, 2013, February 22, 2013, and April 3, 2017. All of these recordings have been produced to the defense. The foundation that must be laid for the introduction into evidence of recorded conversations is a matter largely within the discretion of the trial court. There is no rigid set of foundational requirements. Rather, the Ninth Circuit has held that recordings are sufficiently authenticated under Federal Rule of

Evidence 901(a) if sufficient proof has been introduced "so that a reasonable juror could find in favor of authenticity or identification," which can be done by "proving a connection between the evidence and the party against whom the evidence is admitted" and can be done by both direct and circumstantial evidence. United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), modified by 98 F.3d 1100 (9th Cir. 1996). Witnesses may testify competently as to the identification of a voice on a recording. A witness's opinion testimony in this regard may be based upon his having heard the voice on another occasion under circumstances connecting it with the alleged speaker. Fed. R. Evid. 901(b)(5); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990) ("Testimony of voice recognition constitutes sufficient authentication."). Here, Special Agent Newcomer, who was present for both of the 2013 interviews, will authenticate the recordings of those interviews and Special Agent Ramirez Amezcua, who was present for the 2017 interview, will authenticate the recording from that interview. Additionally, because Special Agent Ramirez Amezcua can recognize defendant's voice, he could testify to statements made during the February 2013 interviews as well.

A lay witness, including a participant in a recorded conversation, may give opinion testimony on the meaning of otherwise vague or ambiguous statements made in the recordings. See United States v. Freeman, 498 F.3d 893, 902 (9th Cir. 2007) ("A lay witness may provide opinion testimony regarding the meaning of vague or ambiguous statements [in recorded conversations]"); United States v. De Peri, 778 F.2d 963, 977-78 (9th Cir. 1985). At trial, Special Agent Newcomer may provide opinion testimony on statements made

during the 2013 interviews because he participated in both of these interviews.  Special Agent Ramirez Amezcua may also provide opinion testimony on statements made during the 2017 interview, although the government intends to admit only a limited portion of this interview.

### 3.   Transcripts of Audio Recordings

The government plans to display a transcript of the audio when playing the recordings of the interviews, in order to help the jury follow along with the recordings in court.  This use of transcripts as demonstrative aids is well-established, and should be allowed here.

"'[A]ccurate typewritten transcripts of sound recordings, used contemporaneously with the introduction of the recordings into evidence . . . [may be used] to assist the jury in following the recordings while they are being played.'"  United States v. Mapuatuli, 762 F. App'x 419, 422 (9th Cir. 2019) (quoting United States v. Turner, 528 F.2d 143, 167 (9th Cir. 1975)).

The Ninth Circuit has upheld the use of "transcripts as an aid in listening to tape recordings" when the jury "listened to the tape while they read the transcript," was "instructed that the tape, rather than the transcript, was the evidence," and when the defense has an opportunity to challenge the accuracy of the transcript.  See United States v. Armijo, 5 F.3d 1229, 1234 (9th Cir. 1993).

Here, the transcript will only be published to the jury while it listens to the recordings, the jury will be instructed that the recordings are evidence (not the transcripts), the defense will be able to cross-examine Special Agent Newcomer about what he said and heard, and defense counsel can argue to the jury about any perceived inaccuracies.  See United States v. Rinn, 586 F.2d 113, 118 (9th Cir.

1 1978) (affirming use of transcripts as demonstrative aids when "a

2 party to the conversations" testified that he agreed with the

3 transcription and was subjected to cross-examination on the accuracy

4 of the transcripts).

5     Given these safeguards, the use of the transcripts as

6 demonstrative aids should be allowed.

7     **B.   Photographs**

8     The government intends to admit photographs from the seizure of

9 the coral on January 31, 2013, as well as photographs of the coral

10 that was placed in the USFWS's aquarium tank in early February 2013.

11 Photographs are generally admissible as evidence.  See United States

12 v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime

13 scene admissible).  Photographs should be admitted so long as they

14 fairly and accurately represent the event or object in question.

15 United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  The

16 Ninth Circuit has held that "[p]hotographs are admissible as

17 substantive as well as illustrative evidence."  United States v. May,

18 622 F.2d 1000, 1007 (9th Cir. 1980).  Here, the photographs from the

19 seizure of coral will be admitted through Special Agent Newcomer and

20 Wildlife Inspector Hilliard, who were present when the coral was

21 seized and the photographs were taken.  The photographs of the coral

22 that was placed in the aquarium tank at the USFWS office will be

23 admitted through Special Agent Newcomer, who observed the coral in

24 the tank.

25     **C.   Public Records**

26     The government expects to introduce public records into

27 evidence, including a certified DMV record.  Rule 803(8) of the

28 Federal Rules of Evidence provides an exception to the hearsay rule

for public records.  The public records exception is one of the few hearsay exceptions that does not require a foundation.  Instead, documents that fall under the public records exception are presumed trustworthy, placing the burden of establishing untrustworthiness on the opponent of the evidence.  Thus, to be admissible under Rule 803(8), the evidence in question need only reflect the activities of a public agency or matters observed pursuant to duty imposed by law as to which there was a duty to report.  See Fed. R. Evid. 803(8); United States v. Loyola Dominguez, 125 F.3d 1315, 1318 (9th Cir. 1997).  In a criminal proceeding, the public records exception, and not the business records exception in Rule 803(6), is the exclusive means by which the government may seek to admit records prepared by a law enforcement agency.

### D.   Business Records

The government intends to admit business records of the USFWS, including filed wildlife declarations, invoices, and CITES permits. The government will admit this evidence either through Special Agent Ramirez Amezcua, Special Agent Newcomer, and/or a custodian of records of the USFWS.

A document is admissible as a business record if two foundational facts are established: (a) the document was made or transmitted by a person with knowledge at or near the time of the incident recorded, and (b) the document was kept in the course of a regularly conducted business activity.  See Fed. R. Evid. 803(6); United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990); Kennedy v. L.A. Police Dep't, 901 F.2d 702, 717 (9th Cir. 1990), overruled on other grounds by Act Up!/Portland v. Bagley, 988 F.2d 868, 872-73 (9th Cir. 1993).

1     In determining if these foundational facts have been

2  established, the court may consider hearsay and other evidence not

3  admissible at trial, including business records declarations.  See

4  Fed. R. Evid. 104(a); Fed. R. Evid. 1101(d)(1); Bourjaily v. United

5  States, 483 U.S. 171, 178-179 (1987).  The foundation for business

6  records may be established either through a custodian of records or

7  "other qualified witness."  Fed. R. Evid. 902(11).  The phrase "other

8  qualified witness" is broadly interpreted to require only that the

9  witness understand the record keeping system.  See Ray, 930 F.2d at

10  1370.  "There is no requirement that the government establish when

11  and by whom the documents were prepared."  Id.; United States v.

12  Huber, 772 F.2d 585, 591 (9th Cir. 1985) ("[T]here is no requirement

13  that the government show precisely when the [record] was compiled.").

14     **E.   Defendants' Statements**

15     The government will admit multiple statements by defendant

16  during his interviews with Special Agents Newcomer and Johnson on

17  February 1, 2013, and February 22, 2013.  These statements by

18  defendant are admissible as party admissions under Federal Rule of

19  Evidence 801(d)(2).  See Territory of Guam v. Ojeda, 758 F.2d 403,

20  408 (9th Cir. 1985).  Defendant, however, cannot elicit his own prior

21  statements under Federal Rule of Evidence 801(d)(2) during the

22  government's case in chief, because such statements are hearsay.

23  United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) ("The

24  self-inculpatory statements, when offered by the government, are

25  admissions by a party-opponent and are therefore not hearsay, but the

26  non-self-inculpatory statements are inadmissible hearsay.  If the

27  district court were to have ruled in his favor, [the defendant] would

28  have been able to place his exculpatory statements before the jury

1  without subjecting [himself] to cross-examination, precisely what the

2  hearsay rule forbids." (citations and internal quotations omitted));

3  United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (per

4  curiam) ("[The defendant] was not prevented from introducing his

5  denial -- he could have testified to the statement himself.  He chose

6  not to testify.  It seems obvious defense counsel wished to place

7  [the defendant's] statement to Bateman before the jury without

8  subjecting [the defendant] to cross-examination, precisely what the

9  hearsay rule forbids."); see also United States v. Mitchell, 502 F.3d

10 931, 964-65 (9th Cir. 2007).

11      Evidence that is inadmissible is not made admissible by the rule

12 of completeness, Federal Rule of Evidence 106.  A defendant's non

13 self-inculpatory oral statements are inadmissible even if they were

14 made at the same time as other self-inculpatory statements.  United

15 States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) ("Because

16 [declarant's] out of court statements . . . do not fall within an

17 exception to the hearsay rule, they are inadmissible, regardless of

18 Rule 106."); see also Ortega, 203 F.3d at 682 ("[T]he rule of

19 completeness . . . applies only to written and recorded statements.

20 Because the officer's testimony concerned an unrecorded oral

21 confession, the rule of completeness does not apply.  Even if the

22 rule of completeness did apply, exclusion of [the defendant's]

23 exculpatory statements was proper because these statements would

24 still have constituted inadmissible hearsay." (citation and internal

25 quotations omitted)).

26      **F.   Best Evidence Rule**

27      A duplicate is admissible to the same extent as an original

28 unless (1) a genuine question is raised as to the authenticity of the

original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.  Fed. R. Evid. 1003.  A "duplicate" is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original.  Fed. R. Evid. 1001(3).  What is an original for some purposes may be a duplicate for others.  Thus, a bank's microfilm record of checks cleared is the original for as a record.  However, a print offered as a copy of a check whose contents are in controversy is a duplicate.  Fed. R. Evid. 1001, Notes of Advisory Committee on 1972 Proposed Rules.

### G.   Affirmative Defenses

Defendant has not given notice of any intent to rely on any defense of entrapment, alibi, or any other affirmative defense. Therefore, to the extent defendant attempts to rely on any such defense, the government reserves the right to object and to move to preclude defendant from asserting this defense.  Defendant has provided notice of intent to introduce expert evidence relating to a mental condition bearing on the issue of guilt under Federal Rule of Criminal Procedure 12.2(b).  (Dkt. 41).  The government objects to the introduction of this evidence for the reasons explained in its motion in limine to exclude defendant's proposed expert testimony. (Dkt. 48 at 8-23).

### H.   Reciprocal Discovery

Defendant has not produced any reciprocal discovery to which the government may be entitled under Rules 16(b) and 26.2, except for a single expert report by Dr. Jeffrey Wertheimer, dated March 1, 2019,

22

and a declaration by him, submitted on November 1, 2019.  Although the defense expert examined the coral at the USFWS office on November 8, 2019, to date, no discovery of his inspection of the coral have been provided to the government.  Therefore, to the extent defendant attempts to introduce or use any documents at trial that he has not produced, the government reserves the right to object and to seek to have such evidence precluded.

**V.    CONCLUSION**

The government respectfully requests leave to file supplemental trial memoranda before or during trial, as may become appropriate.